IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE

TINA CAVENESS,

     Plaintiff,

v.                               Docket No. 3:10-0650

VOGELY & TODD, INC., and DON          Judge Haynes
DURHAM,

     Defendants.

_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS

Plaintiff Tina Caveness provides this Memorandum of Law in support of her Motion for Partial Summary Judgment against Defendants Vogely & Todd, Inc. ("V&T") and Don Durham ("Durham") (collectively "Defendants"). Plaintiff moves for summary judgment on her claims for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. (Count I) of her Complaint. Thus, Plaintiff respectfully submits that her motion be granted because no genuine issue of material fact exists that Defendants are liable to Plaintiff for unpaid overtime wages.

### Summary

The undisputed evidence, as set forth more specifically in Plaintiff's Statement of Undisputed Facts, and incorporated fully herein, demonstrates: (1) Plaintiff was a non-exempt employee under the FLSA; (2) Defendants failed to pay Plaintiff for overtime work at one-and-a-half times her normal hourly rate as required by 29 U.S.C. § 207(a)(1); and (3) Defendants are jointly and severally liable to Plaintiff as a result of their willful failure to pay Plaintiff wages due

to her under the FLSA. Accordingly, judgment should be entered in Plaintiff's favor as to Count I and such other proceedings be held as necessary to determine the full extent of Plaintiff's damages related to the unpaid wages.

## I. UNDISPUTED MATERIAL FACTS

Defendant Vogely & Todd ("V&T") is an employer within the meaning of 29 U.S.C. § 203(e) and does business in Davidson County, Tennessee. Complt., ECF No. 1, ¶ 6; Answer, ECF No. 2, ¶ 6. Defendant Don Durham is the owner, board member, and/or managing agent of V&T. Complt. 1, ¶7, Answer, ¶7; Durham Dep. 18-19, Apr. 14, 2011. Durham controls directly or indirectly the management of Defendant V&T. *Id.* Durham has primary responsibility the hiring, firing, scheduling, supervising, payroll practices, determination of employee pay rate and responsibility for FLSA compliance. *Id.*, Durham Dep. 20-21, 25-26, 157-158. Durham is considered an "employer" under the FLSA (29 U.S.C. §203(d)). Complt. 1, ¶7, Answer, ¶7.

V&T is a body shop that repairs or restores damaged vehicles. Sprinkles Dep. 10-11; Durham Dep. 20. V&T had an annual gross revenue that exceeded $500,000.00 in 2009. Durham Dep. 31-32. Don Durham hired Tina Caveness to work as an estimator for V&T on or around April 15, 2009. Durham Dep. 71-72; Sprinkles Dep. 31, 59, Ex. 4, April 15, 2011 [Rule 30(b)(6) deposition]; Caveness Decl. ¶4, June 1, 2011. Mr. Durham was the sole decision-maker with regards to the hiring Ms. Caveness. Durham Dep. 67. Mr. Durham hired Ms. Caveness to work for V&T at a rate of $750.00 per week. Durham Dep. 57, 67; Caveness Decl. ¶4.

While working for V&T, Ms. Caveness's supervisors were Don Durham, owner of V&T, Ben Durham and Rick Flores. Durham Dep. 80-81; Caveness Dep. 146, 108-109, April 12, 2011; Decl. Rick Flores, ¶¶3-4, June 1, 2011. The qualifications for an estimator at V&T include prior experience, being able to input information in a computer and proficiency in the computer

estimating system.  Durham Dep. 96. There is no specific educational requirement to become an estimator at V&T.  *Id.* at 97. Ms. Caveness' job duties as an estimator included:  looking at and documenting visible damage, putting damage information into a computer program that calculates the parts needed and labor costs, informing the customer and insurance company of the status and cost of repair and what is being repaired and making sure the work gets completed, documented and paid for.  Durham Dep, 72-77; Sprinkles Dep. 31-32; Caveness Dep. 235-236.

Defendants asserted an affirmative defense that Plaintiff was an exempt employee, without identifying which exemption applied.   Answer 5, ¶5. V&T later claimed that Ms. Caveness was exempt from the FLSA under the administrative and executive exemptions to the FLSA. Sprinkles Dep. 50, 62. Durham Dep. 131.

Ms. Caveness did not manage V&T as a primary job duty, she only managed her assigned jobs.  Sprinkles Dep. 38-39.  Ms. Caveness did not manage other employees or tell them how to do their particular job, rather after a repair job had been assigned by Mr. Durham or another manager to a particular technician, *i.e.*, metal shop, painter or detailer, Ms. Caveness made sure the technician had the appropriate paperwork and that the job was moving along for reporting purposes.  Sprinkles Dep. 42-43; Caveness Dep. 181-182, 235. The technicians were assigned to a particular job by Don Durham, Ben Durham or Rick Flores.  Caveness Dep. 235; Decl. T. Caveness, ¶7; Decl. R. Flores ¶6.  After one of these persons assigned a technician, Ms. Caveness made sure that the technician was aware of the job. *Id.* ¶8.  Ms. Caveness did not have the discretion to assign a job to a particular technician. *Id.* ¶¶7,8. The technicians reported to and were managed by Don Durham.  Caveness Decl. ¶8; Decl. R. Flores ¶6. The technicians did not report to Ms. Caveness.  *Id.* ¶7. The only reporting the technicians did to Ms. Caveness was to advise her about the status of a particular job so she could inform the customer.  *Id.* ¶8.

Ms. Caveness did not have the authority to hire or fire employees, only Mr. Durham did. Durham Dep. 99-100; Sprinkles Dep. 43. Ms. Caveness did not interview, train or adjust technicians' rates of pay. Sprinkles Dep. 44. Ms. Caveness did not establish budgets for V&T. Sprinkles Dep. 46. Ms. Caveness did not set up safety protocols for V&T. Sprinkles Dep. 46-47. Ms. Caveness was not responsible for monitoring or setting up legal compliance measures at V&T. Sprinkles Dep. 47.

Estimating is an essential part of the services provided to V&T's customers. Sprinkles Dep. 57-58. Ms. Caveness did not have discretion to negotiate prices or make decisions that had a financial impact on V&T. Caveness Decl. ¶¶9-11. All pricing at V&T was set by Don Durham. *Id.* ¶10. Estimators at V&T are involved in the process of seeing a car through the shop from start to finish. Durham Dep. 72. In particular, when a car comes in the estimator assesses the damage, puts the information about the damage in a computer program, Pathways, and the programs estimates the labor and parts costs. Durham Dep. 72-73; Caveness Dep. 79, 218-219. *See* Caveness Decl.9 .

Mr. Durham and V&T did not keep track of the daily hours Ms. Caveness worked. Durham Dep. 136; Sprinkles Dep. 18-20. Ms. Caveness usually worked from 6:00 a.m. to 6/6:30 p.m. Caveness Dep. 79-80, 218-219. Ms. Caveness was not paid time and a half for hours she worked in excess of a forty (40) hour workweek. Caveness Decl. ¶¶5, 6. Rick Flores, Ms. Caveness' supervisor witnessed her arriving before V&T's business hours and after V&T closed for the day. Flores Decl. ¶5. Ms. Caveness estimates she has not been paid approximately 320 hours of overtime wages. Caveness Decl. ¶6.

4

Mr. Durham did not consult with an attorney or review FLSA exemptions until after the instant lawsuit was filed. Durham Dep. 130, 138; Sprinkles Dep. 37. Mr. Durham relied on the practices of other shops and knew that very few other shops paid estimators an hourly rate. *Id.*

## II. ARGUMENT

**A.** **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The court's function is not to determine the truth of the matters asserted, but whether there is a genuine issue for trial. *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

In the Sixth Circuit, an employer claiming to be exempt from FLSA requirements bears the burden of proving a specific exemption applies. *Martin v. Ind. Mich. Power Co.,* 381 F.3d 574, 578 (6th Cir. 2004) (citing *Douglas v. Argo-Tech Corp.,* 113 F.3d 67, 70 (6th Cir. 1997)). The exemption is to be narrowly construed against the employer. *Id.* A plaintiff may be entitled to summary judgment on the issue of whether she falls within an exemption to the FLSA, unless the employer "can come forward with evidence at least creating a genuine issue of material fact as to whether plaintiff meet each and every element of the exemption." *Martin,* 381 F.3d at 578.

**B.** **Plaintiff Is Entitled To Summary Judgment on Her FLSA Claims**

1. *The FLSA Generally*

The law requiring an employer to pay minimum wages and overtime is well settled. The FLSA requires employers to pay at least the applicable minimum wage per hour. 29 U.S.C. § 206(a)(1). The FLSA also requires employers to pay their employees overtime at the rate of one and one-half times their regular rate of pay for each hour of overtime that they work over 40 hours per week. 29 U.S.C. § 207(a). It is axiomatic under the FLSA that employers must pay employees for all "hours worked." 29 U.S.C. §§ 206, 207(a).

The FLSA, however, exempts employers from this requirement with respect to individuals "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). In a dispute over whether an employee is exempt from the FLSA's overtime requirement, the employer bears the burden of establishing that the employee qualifies for the exemption. *Martin,* 381 F.3d 578. An exemption is to be narrowly construed against the employer. *Id.* The burden is on the employer to establish each element of the exemption by a preponderance of the evidence. *Renfro v. Ind. Mich. Power Co.,* 497 F.3d 573, 576 (6th Cir. 2007).

As discussed above, it is undisputed in this case that Defendants failed to properly record all hours that Plaintiff worked. SOF ¶30. It is also undisputed that Plaintiff regularly worked over forty (40) hours per week yet was paid $750 per week regardless of how many hours she worked. SOF ¶32, 34. The FLSA provides that employers are required to pay overtime compensation to employees who work over forty hours per work week. 29 U.S.C. § 207(a).

In their Answer, Defendants asserted an affirmative defense that Plaintiff was an exempt employee, without identifying which exemption they contend applied. SOF ¶16. However, during Defendants' depositions, they asserted both executive and administrative exemptions were applicable to justify their failure to pay Plaintiff overtime premiums. SOF ¶17. As discussed below,

Case 3:10-cv-00650   Document 22   Filed 06/01/11   Page 6 of 19 PageID #: 93

Defendants cannot meet their burden of proving that Plaintiff was an exempt executive or administrative employee.

2.      *The Executive Exemption is Inapplicable*

An employee qualifies as a bona fide executive if: (1) she is "[c]ompensated on a salary basis at a rate of not less than $455 per week"; (2) her "primary duty is management of the enterprise in which [she] is employed or of a customarily recognized department or subdivision thereof"; (3) she "customarily and regularly directs the work of two or more other employees"; and (4) she "has the authority to hire or fire other employees," or her "suggestions and recommendations as to the hiring, firing, advancement, promotion[,] or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a). Courts cannot rely upon the plaintiff's or the employer's description of the plaintiff's position or authority; but instead must "look at the plaintiff's actual duties" to determine whether she qualifies for the executive exemption. *Ale v. TVA,* 269 F.3d 680, 692 (6th Cir. 2001). For purposes of the exemption, the term management includes:

> activities such as interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

7

29 C.F.R. § 541.102. Notably, "[a]n employee who merely assists the manager of a particular department and supervises two or more employees only in the actual manager's absence does not meet this requirement." 29 CFR § 541.104(c).

Ms. Caveness does not contest that she was paid a salary as set forth in the first element. However, there is no evidence that her "primary duty" was management of V&T or of a recognized department or subdivision of V&T. To the contrary, Plaintiff was an estimator and had no managerial role. SOF ¶¶13, 18, 19, 21. *See* 29 C.F.R. § 541.102. Nonetheless, Defendants unconvincingly attempt to claim that she managed the body shop technicians, despite V&T's former body shop manager's, Plaintiff's and Don Durham's statements that which she did not. SOF ¶¶ 3, 13, 15, 18-21. Even accepting Defendants' dubious claims as true, Defendants are still unable to show that Plaintiff's "primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof," as Plaintiff neither had the primary responsibility of managing either V&T or one of its subdivisions, nor performed work that constituted exempt managerial duties. Because Defendants cannot prove this essential element, Defendants attempt to assert an executive exemption in this case must fail as a matter of law.

It is undisputed that under any common sense understanding, Plaintiff's primary duty was to estimate the cost of repair jobs on customer vehicles, deal with customers and insurance companies to obtain authority for V&T to perform the repair work, and insure payment. SOF ¶15. To a lesser extent, Plaintiff had to deal with other V&T employees, such as parts department employees and body shop technicians who performed the actual repair work. SOF ¶15. At no

time was her "primary duty"[1] the management of either "the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof." SOF ¶¶18-23.

There is no evidence that Ms. Caveness "customarily and regularly directs the work of two or more other employees." 29 C.F.R. § 541.100(a). Clearly Plaintiff did not have the primary duty of managing V&T, that role was undertaken by Durham. SOF ¶¶13, 22, 23. Instead, V&T has attempted to label Plaintiff an "Assistant Body Shop Manager,"[2] apparently trying to position her as a manager over the body shop department. SOF ¶12. When asked about this exemption during her deposition, V&T's corporate representative stated that Ms. Caveness supervised the body shop workers who were assigned plaintiff's vehicles. SOF ¶15. Even if accepting Defendants' contention as true for purposes of this motion, Defendants can only hope to show that Plaintiff at times directed some of the body shop technician's work. While relevant

---

[1] § 541.700 Primary duty. (a) To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

(b) The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

(c) Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

[2] Defendants attempt to create an issue of fact by referring to her an "Assistant Body Shop Manager" in their Answer. However, a job title is not controlling for purposes of FLSA analysis. *Ale v. TVA,* 269 F.3d 691 ("[t]he words 'in charge' are not a magical incantation that render an employee a bona fide executive regardless of [her] actual duties."). Moreover, they referred to her and similarly situated employees as "Estimators" in their discovery responses, pleadings and deposition testimony, and Plaintiff identified herself with the title "Estimator" on her company emails. SOF ¶32 .

in the analysis under 29 C.F.R. § 541.100(a)(3) as to whether Plaintiff customarily and regularly directed the work of two or more other employees, even though 29 C.F.R. § 541.104 makes it clear this factor encompasses a supervisory role over all aspects of an employees work, Defendants must show a greater managerial role to qualify for the exemption. *Ale v. TVA,* 269 F.3d 692. Tellingly, when asked who the managers of V&T were during 2009, Mr. Durham, the owner, did not identify Ms. Caveness as a manager.  SOF ¶13.

There is no evidence that in her job as estimator Ms. Caveness had "the authority to hire or fire other employees," or her "suggestions and recommendations as to the hiring, firing, advancement, promotion[,] or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a). SOF ¶22, 23. The reality is that Plaintiff was not the manager of the body shop, nor was her primary duty the management of the body shop, she was an estimator. SOF ¶¶ 19, 21. *See* SOF ¶¶11, 12. Throughout Plaintiff's employment, V&T had body shop managers, in addition to Mr. Durham, first Ben Durham (Durham's son) and then Rick Flores. SOF ¶13.  As such, regardless how much Defendants attempt to characterize Plaintiff as a manager over body shop technicians, the FLSA requires a greater scope of both time and responsibility to qualify as an exempt executive.  29 C.F.R. § 541.102.  In this case, of the responsibilities listed in the regulations, the facts in this case show that, at most, the only management-type duties that Plaintiff ever performed were training another estimator (i.e. not a subordinate) on a computer program when he started work (SOF ¶ 36) and allegedly being allowed to provide input to Durham as to her opinions on how a body shop worker performed his or her job when working on a vehicle she wrote an estimate.  (SOF ¶ 19).  The latter resonates in the fourth factor of the regulations, but is insufficient in this case to render Plaintiff's primary duty one of performing exempt managerial work.  *See Petersen v. The Cleveland Institute of Art*,

2011 U.S. Dist. LEXIS 41578 at *22-23 (N.D. Ohio April 18, 2011) (even though plaintiff performed tasks that arguably could be considered executive the plaintiff was not exempt because Plaintiff was directed by supervisors to undertake those managerial tasks) (**Ex. 1**). Instead, the type of duties one generally associates with a manager, *i.e.,* hiring and firing employees, setting hours or pay rates, disciplining or reviewing employees, dealing with employee complaints, or directing the work of subordinates, were not part of Plaintiff's activities at all. 29 C.F.R. § 541.100(a).

Lastly, not all supervisors are considered to have a managerial role. For example in *Ale v. TVA,* 269 F.3d 692, the Sixth Circuit stated "the shift supervisors did not set or adjust the hours of work, determine which employees manned which posts, or train employees. Although shift supervisors did spend some of their time supervising employees, this supervision was not managerial in nature because they had no control over the people they supervised." In *Ale*, the plaintiff's primary duties were to call people to come to work and to do the payroll, so even though the plaintiff supervised other employees, it was not his primary duty. *Id.* Likewise, Ms. Caveness' primary duty was to do car estimates, not supervise the technicians or other employees. SOF ¶15,19. Defendants, admit that Plaintiff's job was to do estimates and shepard the car through the shop. SOF ¶15. Defendants simply cannot now try to claim that her primary duty was to manage the body shop, particularly in light of the fact that there were other shop managers, and she was not identified as one. SOF ¶13.

Therefore, there is no evidence Defendants can establish each element of the executive exemption. *Martin,* 381 F.3d at 578. As such, this exemption fails as a matter of law.

3.   *The Administrative Exemption is Inapplicable*

To prove that an employee is "employed in a bona fide administrative capacity," an employer must show that (1) the employee is compensated on a salary or fee basis at a rate of not less than $455 per week; (2) the employee's primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer; and (3) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200.

The regulations distinguish the "servicing" of a business from "working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). This distinction is commonly referred to as the "administrative/production dichotomy." *See, e.g., Schaefer v. Ind. Mich. Power Co.,* 358 F.3d 394, 402 (6th Cir. 2004). Under this dichotomy, employees who are engaged in work related to their employers' administrative operations may qualify for the administrative exemption, while those who perform "production" work cannot. *Martin,* 381 F.3d at 582. "Under the administrative/production dichotomy analysis, the job of 'production employees' is to generate (*i.e.* 'produce') the very product or service that the employer's business offers to the public." *Renfro,* 370 F.3d 517. However, "the regulations do not set up an absolute dichotomy under which all work must either be classified as production or administrative." *Martin*, 318 F.3d at 582.

The third element of the administrative exemption focuses on concerns whether an employee, in performing his or her primary duty, exercises "discretion and independent judgment" regarding "matters of significance." 29 C.F.R. § 541.200(a)(3). In determining whether an employee exercises discretion and independent judgment, it is necessary to consider "all the facts involved in the particular employment situation in which the question arises." 29

C.F.R. § 541.202(b). Further, factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b). Additionally, work directly related to management or general business operations includes, but is not limited to, "work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." 29 C.F.R. § 541.201(b). "To determine whether an employee, constrained by guidelines and procedures, actually exercises any discretion or independent judgment, [a court must] consider whether those guidelines and procedures contemplate independent judgment calls or allow for deviations." *Renfro,* 497 F.3d at 577.

> a. *Ms. Caveness engages in production work*

As discussed above, Plaintiff concedes that she was paid on a salary basis. However, Plaintiff's job as an Estimator at a body shop that provides estimates for repairs and then

performs repairs is not work "directly related to the management or general business operations" of the body shop. *Martin,* 381 F.3d at 582. Instead it is "production work." V&T's business is to repair or restore cars. SOF ¶5. Estimating is an essential part of the *services* that V&T offers. *Renfro,* 370 F.3d 517. Indeed, V&T's corporate representative stated that estimating was an essential part of the services offered to its customers and that the estimators act as advisors to the customers about the services offered. SOF ¶¶27-28. Because Ms. Caveness is involved in the product, *i.e.*, the repair and restoration of cars, she is involved in production, not management or administration. *Id. See Reich v. Am. Int'l Adjustment Co., Inc.,* 902 F.Supp. 321, 325 (D. Conn. 1994) (holding automobile damage appraisers nonexempt; employer was "in the business of resolving damage claims"). Therefore, because Defendant will not be able to establish the second element of the administrative exemption by a preponderance of the evidence, summary judgment is appropriate. *Renfro,* 497 F.3d 576.

   *b.* *Ms. Caveness did not exercise discretion and independent judgment*

The estimating work performed by Ms. Caveness was not work related to management or general business operations, *e.g.* work that one associates with "corporate" such as human resources, tax, finance, budgeting, bugeting, safety and health, computer networking. C.F.R. § 541.201(b). In this case, doing estimating tasks and sheparding a customer's vehicle through the process and making sure payment is made is the essential product V&T provides, thus, their work relates to the providing of services to customers. SOF ¶¶ 15, 19, 24-27. Estimators apply particular skills and knowledge in completing their assignments. However, they generally do not exercise the sort of discretion necessary to qualify them as administrators. 29 C.F.R. § 541.200(a)(3).

In general, estimators are not primarily involved in the management of the company.

Instead, their work relates to the providing of services to customers. *Reich,* 902 F.Supp. 325 (appraisers gather facts and determine the cost of repair to damaged automobiles, they do not administratively run the business, rather they carry out the daily affairs of it). Estimators apply particular skills and knowledge in completing their assignments. However, Ms. Caveness generally did not exercise the sort of discretion necessary to qualify her as an administrator. SOF ¶¶15, 17-19. She gathered facts about the repairs needed, she put the information in a computer program which estimated the repair or replacement work that was required, as well as the labor costs, and parts needed. SOF ¶¶15, 29. Then Don Durham assigned a technician to the work and Ms. Caveness stayed updated on the progress of the work so she could relay that information to the customer and insurance company. SOF ¶15. She then followed up to make sure the work was paid for. SOF ¶¶19-21, 28. Accordingly, even if Defendant is able to demonstrate the second element of the administrative exemption, Defendant will not be able to establish the third element of the administrative exemption by a preponderance of the evidence. As such, summary judgment is appropriate. *Renfro,* 497 F.3d 576 (defendant must establish all elements of an exemption).

4.  *Defendants Failed to Pay Plaintiff Wages Due to Her*

The FLSA requires employers to compensate their employees at one-and-one-half times their regular rates for hours worked in excess of forty in a workweek. *Jordan v. IBP, Inc.*, 542 F.Supp.2d 790, 799 (M.D.Tenn. 2008) (citing 29 U.S.C. § 207(a)(1)). A FLSA plaintiff bears the burden to show the performance of work not properly compensated under the FLSA. *Jenkins v. Sara Lee Corp.*, 2008 U.S. Dist. LEXIS 35614, *3-4 (E.D.Tenn. March 17, 2008). Plaintiffs may easily discharge this burden by obtaining the employer's pay records evidencing the improper pay

practices. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *O'Brien v. Ed Donnelly Enters, Inc.*, 575 F.3d 567, 602 (6th Cir. 2009).

An employer who violates the FLSA's overtime provisions is liable to affected employees for all unpaid wages and equal amount in liquidated damages. *Elwell v. University Hosps. Home Care Servs.*, 276 F.3d 832, 841 (6th Cir. 2002)(citing 29 U.S.C. § 216(b)). Liquidated damages are not a penalty but, rather, are compensation for the delay in payment of proper wages due. *Ellwell*, 276 F.3d 832, 841 (citations omitted). Liquidated damages are the norm, and the Sixth Circuit has referred to them as mandatory. *Solis v. Min Fang Yang*, 345 Fed.Appx. 35, 38 (6th Cir. 2009)(citing *Martin v. Indiana Mich. Power Co.*, 381 F.3d 574, 585 (6th Cir. 2004)). It is the employer's substantial burden to disprove the appropriateness of liquidated damages by showing it acted in subjective good faith ***and*** with objectively reasonable grounds for believing its pay practices did not violate the law. *Solis*, 345 Fed.Appx. at 38-39; *Ellwell*, 276 F.3d at 841 (emphasis added). Absent sufficient proof, a court is without discretion to refuse an award of liquidated damages. *Solis*, 345 Fed.Appx. at 38-39; *Ellwell*, 276 F.3d at 841.

Defendants failed to compensate Plaintiff for hours worked in excess of a forty hour work week. SOF ¶¶31-34. In this case, liquidated damages are clearly warranted because there is no evidence Defendants engaged in any sort of good faith attempt to properly classify or pay Plaintiff. SOF ¶35. *Elwell v. Univ. Hosps. Home Care Servs.,* 276 F.3d 832, 841 (6th Cir. 2002) (finding liquidated damages appropriate, in part, because Defendant failed to meet its substantial burden of proving that liquidated damages are inappropriate or suggesting that it was relying on the expertise or opinion of any other person or entity with knowledge of the FLSA regulations). *Solis v. Min Fang Yang*, 345 Fed.Appx. at 38 (liquidated damages are the norm, and the Sixth

Circuit has referred to them as mandatory). Thus, Plaintiff is owed wages for unpaid overtime for approximately 320 hours, plus liquidated damages.

> 5. *Defendants Jointly Employed Plaintiff and Are Jointly and Severally Liable to Plaintiff under the FLSA.*

An individual corporate officer with operational control over the enterprise is jointly and severally liable with the business as an employer. *Elliott Travel*, 942 F.2d at 965. "[C]orporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of non-payment" were employers under the FLSA. *Id.* (internal citation omitted).

The Defendants are jointly as severally liable to Plaintiffs as "employers." At all times Don Durham had operational control and ownership over V&T. SOF ¶¶2-4. Don Durham's direct dealings with the terms and conditions of Plaintiff's employment demonstrate he was "acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d). SOF ¶¶7-9. For these reasons, and the "economic realities" analysis *supra*, all Defendants are jointly and severally liable to Plaintiff for FLSA purposes.

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion for partial summary judgment and enter judgment in Plaintiff's favor on the FLSA count.

Respectfully submitted,

*s/ Heather M. Collins*
Heather Moore Collins (#26099)
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215

(615)724-1996
(615)691-7019 (FACSIMILE)
heather@hmcollinslaw.com

and

Cynthia J. Cutler (BPR # 22062)
2002 Richard Jones Rd., Suite B-200
Nashville, Tennessee 37215
Telephone: (615) 242-0005
Email: ccutler@ccutlerlaw.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of June  2011, a copy of the foregoing document was filed electronically with the Court and served on the individuals listed below via electronic transmission:

Nader Baydoun
Stephen C. Knight   15514
Christopher J. Oliver - 20918
Baydoun & Knight, PLLC
Fifth Third Center, Suite 2650
424 Church Street
Nashville, Tennessee 37219-2461


*s/ Heather M. Collins*
Heather Moore Collins